IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE THE APPLICATION OF:
JOHN NAVANI,

        Petitioner,

v.                                        Civ. No. 06-0191 JCH/LFG

BINA SHAHANI,

        Respondent.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Respondent's Motion for New Trial; Alternatively, Motion to Alter or Amend Judgment; Motion for Stay of Enforcement of Order, filed April 14, 2006 **[Doc. No. 17]** ("Motion for New Trial"). The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**.

### DISCUSSION

In the Motion for New Trial, Respondent asks this Court to grant a new trial pursuant to Federal Rule of Civil Procedure 59. In support of this request, Respondent claims that the March 31, 2006, Order was clearly erroneous and that the Court should consider new evidence. In the alternative, Respondent asks the Court to stay enforcement of the March 31, 2006, Order pending decision of Respondent's petition for an order of protection pursuant to the New Mexico Family Violence Protection Act, NMSA §§ 40-13-1 *et seq.*[1]

---

[1] The New Mexico Family Violence Protection Act petition originally was filed in the state district court. *See Shahani v. Navani*, D-0101-DV-2006-00221, First Judicial District Court. Petitioner removed the case to this Court, *see Navani v. Shahani*, No. CIV 06-267 ACT/RHS,

I.      <u>Motion for New Trial</u>.

The Tenth Circuit has held that "grounds warranting a motion to reconsider include . . . new evidence previously unavailable, and . . . the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts [or] a party's position." *Id.* (citation omitted). Respondent asks the Court to grant a new trial on both of these grounds.

A.      <u>Clear Error</u>.

Respondent argues that the Court made an unlawful custody determination in the March 31, 2006, Order. Specifically, Respondent challenges the following language in the March 31, 2006, Order: "On March 22, 2006, *the Court held a hearing concerning the proper jurisdiction, the British or the United States court, for determination of the custody of the minor child*," and "For the foregoing reasons, the Court GRANTS the petition *since the Court in Great Britain is the appropriate jurisdiction for determination of the custody of the child*." Respondent argues that by this language the March 31, 2006, Order impermissibly decides which court has jurisdiction over the custody of the minor child.

The parties agree, as does this Court, that the Hague Convention of the Civil Aspects of International Child Abduction ("Convention") empowers courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims. *See* International Child Abduction Remedies Act (ICARA), 42 U.S.C. § 11601(b)(4). The March 31,

---

and filed a motion to consolidate the Family Violence Act case with this case. Respondent, in turn, filed a Motion for Remand and Lack of Subject Matter Jurisdiction, which is still pending before Magistrate Judge Torgerson. *See id.*

2006, Order, however, does not decide underlying child custody claims. Rather, the Order clearly addresses whether, under the Convention, exceptions apply that would justify the retention of the minor child in the United States. As the Order explains, "The Hague Convention was created to protect children internationally from the harmful effects of a wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Mar. 31, 2006, Order, p. 5 (citing Hague Convention, Preamble, 51 F3d. Reg. 10498). The Court found that Petitioner demonstrated that the retention of the minor child in the United States was wrongful. Specifically, the Court concluded that Petitioner had demonstrated that retention caused a breach of his custodial rights pursuant to the country of the child's habitual residence, and that at the time of the retention he actually was exercising those rights. *Id.* at 6. The Court further explained that because Petitioner had established that retention was unlawful, the burden shifted to Respondent to establish a defense to the minor child's removal. *Id.* Because the Court determined that Respondent failed to establish any of the narrow defenses to wrongful removal, *see id.* at 8, the Court ordered that the child be returned to England pursuant to the Hague Convention, *id.* at 9. The March 31, 2006, Order properly applied the law set forth in the Hague Convention to determine whether the minor child should be returned to his country of habitual residence. Accordingly, the Court denies Respondent's Motion for a New Trial on the ground of clear error or manifest injustice.

  B. <u>New Evidence</u>.

Respondent also asks the Court to grant a new trial so that it can consider new, previously undiscovered evidence. Specifically, Respondent maintains that on March 29, 2006, following the hearing on the merits that formed the basis for the March 31, 2006, Order, Petitioner abused the minor child during a court-ordered visitation. According to Respondent, the minor child reported

3

to Respondent, a child clinical psychologist Dr. Edward Siegel, Ph.D., and Dr. Charles D. Glass, Ph.D. that Petitioner hit, struck, or pushed the minor child. Respondent maintains that this new evidence warrants reconsideration of the portion of the March 31, 2006, Order that finds Respondent failed to establish a defense to return of the child by demonstrating that there is a grave risk that returning the minor child to England would expose the child to harm.

The Hague Convention specifically provides that a party opposing return of a minor child to a country of habitual residence may defend against return by showing "by clear and convincing evidence that there is a grave risk that the return of the child would expose the child to physical or psychological harm." Hague Convention Article 13(b); ICARA, 42 U.S.C. § 11603(e)(2)(A). The Court concludes that Respondent has failed to meet this exacting legal standard by presenting any new evidence that would demonstrate by clear and convincing evidence that returning the child to England would place the child at grave risk. Although Drs. Siegel and Glass testified that the conduct alleged by the minor child constituted "child abuse," the Court concludes that even assuming, *arguendo*, that the facts alleged were true, these facts do not rise to the level of "grave risk." Moreover, the Court not only finds that the alleged new evidence does not rise to the level of "grave risk," but also that the evidence does not constitute child abuse. The Court bases this finding upon its *in camera* interview with the minor child, the testimony of Respondent at the May 25, 2006, hearing on the Motion for a New Trial and the March 22, 2006, hearing on the merits, and the testimony of Petitioner.

On March 22, 2006, Respondent's counsel asked her whether "the child ever suffered physical harm" at the hands of Petitioner. Tr. p. 33, ll. 19. Respondent replied, "No, not that I know of." *Id.*, ll. 20. In addition, Respondent testified that she has "always encouraged a relationship between

4

[her] son and [her] husband, even at times when [her] husband was not interested in seeing his child." *Id.*, p. 62, lls. 20-22. There is no evidence that prior to the March 29, 2006, alleged new evidence of Petitioner's physical abuse of the minor child, that Respondent ever maintained, either in these proceedings or the English proceedings, that Petitioner had physically abused the minor child. Although the minor child did inform the Court during its *in camera* interview with the child that Petitioner hit him as alleged by Respondent on March 29, 2006, based upon Respondent's own testimony and the record in this case, the Court concludes that the minor child's testimony is not credible.

Specifically, during the Court's *in camera* interview with the minor child, the child indicated that Petitioner hits him all of the time and that the Petitioner hit him all of the time while they were in London, well before the alleged March 29, 2006, incident. If Petitioner hit the minor child all of the time, even while the child and his mother were in England, the Court has no doubt that the minor child would have informed Respondent of this fact. The child informed the Court of the alleged constant abuse with ease, and he would have informed Respondent, or indeed Drs. Siegel and Glass, with ease as well. If this had happened, Respondent would have raised the alleged prior physical abuse in the English proceedings as well as these proceedings. Respondent, however, has made no such allegation. The Court does not find the minor child's testimony that Petitioner hits him all of the time credible, and therefore does not find the minor child's testimony that Petitioner hit him on March 29, 2006, credible.

In addition, the Court notes that based upon the minor child's testimony and demeanor, it appeared that the minor child was more concerned with the fact that spending time with Petitioner was boring and that being with Respondent was fun, than with any alleged physical abuse. The minor

5

child stressed that his father did not give him presents during the March 2006 visit, that his father took him to basketball games, which was boring, that his grandparents had to watch him while his father was at work, which was no fun, and that he did not wish to return to England. In contrast, the minor child stated that he had fun with his mother in Santa Fe and that he wished to remain in Santa Fe with his mother. When discussing the alleged instances of physical abuse, the child stated in a casual, non-emotional manner that his father hit him all of the time and was mean to him. The abuse was not the minor child's dominant concern, but rather appeared to be a means to an end--*i.e.*, avoiding return to England. Based upon the Court's *in camera* interview, it is clear to the Court that the minor child does not wish to return to England and prefers to remain in Santa Fe with his mother. The Court finds that this overriding concern prompted the minor child to state that his father physically abused him and does not find that the physical abuse actually occurred.

The Court also concludes that Petitioner's testimony regarding the March 29, 2006, incident was credible. Petitioner indicated that the physical contact between he and the minor child occurred in the context of fun or playful "rough-housing" that ended with the child being upset, not because he was hit by Petitioner, but because Petitioner submitted chess scores to Yahoo, which would lower the minor child's chess rating. The minor child also maintains that the incident occurred in the context of a chess game with his father, which lends further credibility to Petitioner's testimony.

The Court also notes that when Drs. Siegel and Glass testified that in their opinions Petitioner engaged in child abuse, Drs. Siegel and Glass did not have the benefit of reviewing all of the information the Court considered in finding that no child abuse occurred. Drs. Siegel and Glass met only with the minor child and Respondent. They did not meet with or talk to Petitioner. In addition, Drs. Siegel and Glass did not indicate that they were aware of Respondent's testimony that she did

6

not know of any instances in which Petitioner physically abused the minor child and of the child's contradictory testimony that Petitioner hits him, and has hit him in the past, all of the time. Drs. Siegel and Glass also were not privy to the remainder of the Court's *in camera* interview with the minor child, in which it was clear that the minor child's primary concern and objective was to avoid returning to England.

In addition, the Court concludes that although various witnesses testified to emotional and school-related changes in the minor child after Petitioner's visit to New Mexico, no witness was able to demonstrate that these changes were the result of March 29, 2006, incident between the minor child and Petitioner. The Court has no doubt that the minor child's pending return to England has impacted him. The minor child has made it clear that he does not wish to return to England and that he wants to remain in Santa Fe with his mother. The mere fact that the minor child is going to be uprooted from his friends, family, and home and to be moved to England would more than explain the changes in the minor child's emotional state. The Court further notes that had Respondent not removed the minor child wrongfully from his country of habitual residence in the first instance, the minor child would not be undergoing these emotional changes.

Finally, although the Court bases its conclusion on the foregoing, the Court notes that Respondent's counsel represented that Respondent did not know that she could file a petition for an order of protection in state district court until she met with Dr. Siegel. In contrast, Dr. Siegel testified that Respondent was aware of the procedure for filing a petition for an order of protection before she spoke with him. Based upon this, as well as the foregoing, it appears to the Court that Respondent strategically pursued the petition for an order of protection and the Motion for a New Trial as a final means to secure the minor child's retention in the United States.

Because the Court does not find that the alleged new evidence constitutes child abuse, let alone rises to the level of "grave risk" to the minor child, the Court denies Respondent's Motion for a New Trial on the ground of newly-discovered evidence.

II.     Motion for Stay.

In the alternative, Respondent asks the Court to stay enforcement of the March 31, 2006, Order pending decision of Respondent's petition for an order of protection pursuant to the New Mexico Family Violence Protection Act, NMSA §§ 40-13-1 *et seq*.  Because the Court already has concluded that the facts underlying Respondent's petition for order of protection do not rise to the level of child abuse or constitute "grave risk" to the child, and because the Hague Convention requires prompt return of the minor child to his country of habitual residence, the Court denies the Motion for Stay.

## CONCLUSION

**IT THEREFORE IS ORDERED** that Respondent's Motion for New Trial; Alternatively, Motion to Alter or Amend Judgment; Motion for Stay of Enforcement of Order, filed April 14, 2006 **[Doc. No. 17]** is hereby **DENIED** in its entirety.

Dated this 26th day of May 2006.

                                                                        _____
                                                                        JUDITH C. HERRERA
                                                                        UNITED STATES DISTRICT JUDGE